*43 On the Motion to Dismiss.
The opinion of the Court was delivered by
Bermudez, C. J.
The motion charges:
“ That there does not appear to be any order of appeal;
“ That the amount in dispute is involved in this suit; and,
“ That these proceedings are taken merely to carry into execution a judgment which is final.”
1. The record shows that a motion was made for a suspensive appeal, and that an order, regular in form and substance, was granted upon it.
2. The plaintiff prays that the defendants be commanded to levy a tax to pay the sum of $5,411, for which he has obtained judgments against them, and which are executory. This is enough to make the case appealable.
3. The judgments upon which the plaintiff relies to obtain the mandamus, do not direct the levy of the tax sought to be ordered to be raised. A prayer appears to have been made in the cases in which the judgments were rendered, but it was not granted.
The only execution which those judgments could have received, without further judicial action for their enforcement, in a peculiar way, was, on plaintiffs’ application, a writ of fieri facias from the clerk. He could not have obtained a mandaums from that officer, in the absence of an order, or judgment of the court, to authorize the issuance of the same.
The test, whereby to decide whether an act is in mere execution of the judgment, is to ascertain whether the act is ordered by the judgment, expressly or impliedly, by its very terms, or by operation of law.
The plaintiff does not present the case of a contract, the obligations of which are alleged to have been impaired, or sought to be. His case does not present the features of that decided in 32 A. 887, which was stated to be one of contract; on the merits of which the Court did not pass, and which was remanded for the purpose of inquiring into the nature of the averred contract. What was then said can have no bearing on the present case.
The motion to dismiss is denied.
Rehearing refused.
On the Merits.
The opinion of the Court was delivered by
Poché, J.
Relator, a judgment creditor of the Parish of Jefferson, seeks by mandamus, to compel the levy of a special tax for the payment of his four judgments, amounting together to $5,411, or in the alterna *44 tive, to compel the Police Jury to include in their next budget the amount of his judgments, and to provide for payment of the same by taxation, notwithstanding the constitutional limitation, wliicli is alleged as impairing the obligation of his contracts, which were the basis of his judgments.
Among numerous other defenses, the respondents urge that they had already exhausted their power of taxation, by levying the highest rate authorized under the Constitution and the laws of the State, and they have taken this appeal from a judgment ordering the levy of an additional tax of six mills on the dollar, notwithstanding the constitutional limitation of the Parish tax, in order to pay and satisfy three of fhe four judgments declared upon by Eelator.
The theory on which the judgment of the lower court is predicated, is, that the indebtedness of the Parish to Eelator, which is recognized by final judgments rendered by competent tribunals, arises from contracts made and entered into between- the Parish and the Eelator, who was the Parish Attorney of said Parish, between the years 1871 and 1877, and that, therefore, Art. 209 of our Constitution, which limits the rate of Parish taxation, for all purposes, to ten mills on the dollar, being an impediment in the way of Ms recovery on his judgment, impairs the obligation of his contracts, and is null as to his contracts, as violative of Section 10 of Art. 1, of the Constitution of the United States.
We shall, therefore, confine our investigation to the inquiry suggested by the judgment.
The indebtedness recognized by the judgments sought to ho onfqrced by Eelator, was on account of his salary as Parish Attorney, and for fees due him for services rendered in his said capacity in defending the Parish in several suits; a duty which was imposed upon him by the law winch created Ms office, and which fixed the rate of his compensation for such services.
The law provided for the election of that officer by the Police Jury, and it enacted that in case of the failure of that body to elect a Parish Attorney within a specified time, the right of appointment should bo vested in the Judge of the Parish Court, whoso appointee was entitled to hold the office for the time for which the District Attorney was appointed or elected, and it fixed his salary, to he paid by the Parish, at not loss than one hundred dollars per annum, or as much more as the Police Jury might allow.
■ The record shows that qu the 3d of July, 1872, in order to fill a vacancy caused by the resignation of W. T. Scott, Eelator was appointed •Parish Attorney by the Judge of the Parish Court, and that on the 10th *45 of December, of tlie same year, thirty days having elapsed since the election of the District Attorney of the District, and the Police Jury having failed to elect a Parish Attorney, the Relator was again appointed to that office by the Judge of the Parish Court.
And it also appears from the evidence, that all the emoluments and fees of office which were earned by Relator, and which were allowed him in his judgments, accrued during his tenure under these two appointments.
And we also find in the record, that on the 6th of May, 1872, during the tenure of Rcdator’s predecessor, the Police Jury had, by ordinance, fixed the salary of said W. T. Scott, Parish Attorney, at the sum of onetliousand dollars per annum, and that said ordinance having not been repealed, was recognized in his judgments, as fixing Relator’s salary as Parish Attorney. The question is, therefore, whether the foregoing facts disclose a contract between Relator and the Parish, such as is shielded under the Article of the federal Constitution invoiced by him.
■We think that, under our law and jurisprudence, as well as the numerous adjudications on the subject by the Supreme Court of the United States, the question must be answered in the negative.
“ A contract is an agreement by which one person obligates himself t-o another, to give, to do or permit, or not to do something expressed or implied by such agreement.” Civil Code, Art. 1761.
A contract has also been defined “ as a compact between two or more parties.” 6 Crunch, p. 136, Fletcher vs. Peck, or as “ the agreement of two or more parties to do, or not to do, certain acts.” 8 Wheaton, 92, Green vs Biddle.
It is, therefore, elementary, that the concurrence of the parties, tlie figgregatio mentium, is of the very essence of every contract, and that in this case, the burden of evidence is on Relator to prove affirmatively the existence of a contract between himself and the Police Jury, in the ¡natter of his appointment as Parish Attorney. But, the evidence shows very conclusively that the Police Jury did not, in any manner, directly and indirectly, participate in his appointment as such, and that the right of-appointment of the power from which he received Ms mandate, could be exercised, and could arise only on the failure of the Police Jury to make the appointment within a specified time.
Hence, it follows, that the very legality of Relator’s appointment by the Parish Judge, in tlie manner and under the'emergency under which it was made, depended essentially upon the inaction of the Police Jury, and on its positive exclusion from any participation in the exercise of the appointing power, and it is, therefore, clear that there was not, and could not, by the very nature of things, be any convention or agreement of parties between the Police Jury and Relator.
*46 It is not pretended, nor could it be maintained, that in exercising the power of appointment in this case, the Parish Judge was the agent, the representative, or even the substitute of the Police Juryin the premises, and clothed with any authority to bind the corporation in any contract or agreement.
The act of the Police Jury in fixing the salary of W. T. Scott, as Parish Attorney, by an ordinance which was in force at the date of' Relator’s appointment, and which operated in his favor in the matter of his salary, cannot be construed as a contract or compact with him, to whom it could not have any reference personally. It was merely the exercise of a general power conferred by the Legislature, and from which flowed the legal obligation, until otherwise ordained, to pay the salary thus provided for, to the incumbent of that particular office. We, therefore, conclude that the obligation of the Parish to pay to Relator his salary, and other emoluments of his office, which cannot be contested under the effect of the judgments rendered in his favor, does not arise from a contract or agreement between the Police J ury and the Relator, but that it was created by the operation of law. Civil Code, Art. 1760.
The distinction made by Relator between contracts executory and contracts executed, and which is so learnedly expounded in the numerous decisions which he quotes from the Supreme Court of the United States, can give him no relief, and has no application in this case, in which the evidence fails to show any contract, or conventional obligation, ab initio, and in which the legal obligation of the Police Jury to provide for Relator’s compensation as Parish Attorney, could not, in any contingency, have ripened into a contract executed, or be assimilated to a grant.
All the decisions which he quotes on this point, are predicated on cases showing a contract primarily entered into, and subsequently annulled, or sought to evaded by incompatible legislation, either by the corporation or by the State.
But in this case, there is a total absence, in the relations between the parties, of any of the elements of a contract, and hence, no contract could be evaded or impaired, directly or indirectly. Where there is no foundation, there can be no superstruction, and where there is nothing, there can be no destruction.
It therefore follows, from these premises, that Relator has utterly failed to show in this case, the existence of a contract as contemplated by the article of the federal Constitution, which forbids any State from enacting any law impairing the obligation of contracts, and that he is not entitled to the remedy which he asks at our hands in the enforcement of his claim.
*47 We are not called upon to point out tlie remedy which he might obtain. Our plain duty, under the prayer of his i>etition, is to grant or disallow both of the remedies which he invokes in the alternative.
In resting our decision on the facts showing that Relator had not been appointed or chosen as Parish Attorney by the Police Jury, we do not wish to be understood as holding that the proof of the affirmation of that proposition, or that the relations of any officer elected or appointed, towards the State or any corporation thereunder, would be those of contracting parties, entitling the officer to shield his rights under that article of the federal Constitution now under consideration, which is so frequently invoked by litigants, and which has been so often expounded by the Courts. We particularly omit the expression of an opinion on that point, the solution of which is not necessary for the purposes of this case.
We note the argument of Relator, in calling our attention to the absence in respondents’ answer of a general denial, or of a special denial of his allegation that his judgments were rendered to enforce contracts, and in consequence of which, he invokes the rule that the answer admits what is alleged in the petition and not denied, thus requiring us to consider his allegation of a contract obligation under his judgments as admitted by respondents. We understand this rule to apply to allegations of substantive facts, but not to allegations which are legal deductions from facts, and especially to an allegation which is the essential legal averment on which plaintiff rests his claim or demand.
In the case at bar, the allegation that the employment of Relator as Parish Attorney operated a contract between him and the Parish, is a legal deduction from facts, and is the essential and indispensable averment under which Relator could, by any possibility, obtain the relief sought.
Respondents’ resistance to Relator’s demand, under numerous defenses, must be construed as a denial of such an allegation.
In pleadings, a broad distinction must be made between simple allegations of substantive facts, and allegations predicated on the latter, and pregnant with legal propositions or deductions. Durham vs. Williams, 82 A. 965.
Besides, Relator’s course in administering proof in support of the very averment which he desires us to consider as admitted, justifies the conclusion that he has waived any right which he might have derived from respondents’ silence on this point.
It is therefore ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that the mandamus prayed for by Relator be refused, at his costs, in both Courts.